## GRAFTON BANK *v.* KIMBALL.

If a highway surveyor, under color of his office, seize and sell property to satisfy a tax not legally voted, he is liable in damages to the extent of the value of the property so sold, although the party were liable to be taxed for the object for which the tax was assessed.

If such tax is void, it matters not, as it regards the assessment of damages in such case, whether it be void because raised for an illegal object, or void because not voted in a legal manner.

CASE, to recover for certain property taken and sold by

one Isaac P. Wilson, a highway surveyor.   The plaintiffs
were owners of the property, subject to a lease from them
to one Sturtevant.   On the 24th day of February, 1845,
the selectmen of Haverhill issued and posted up their
warrant for a town-meeting, on the eleventh day of March,
then next.   The 6th article was to "raise such sums of
money as may be necessary to defray town charges for the
ensuing year, and make appropriations for the same."
There was no article to raise money for laying out and re-
pairing highways, unless the above is to be so construed.
The meeting was held as warned, at which the defendants
were chosen selectmen, and sworn; and it was voted to
raise $2,000 to be expended in labor upon highways; and
also to raise $300 to defray town charges for said year.   In
the month of April the defendants assessed a highway tax
against the corporation of Grafton Bank, for the stock of
non-resident stockholders, and committed to said Wilson
a warrant to collect the same; by virtue of which the
property was taken, and the plaintiffs' interest in it sold.
The time for which the plaintiffs were incorporated ended
on the first day of January, A. D. 1844, since which time
they have not issued any bills, nor loaned nor negotiated
their moneys or effects, or made any dividends of interest,
rents or profits upon the stock, and the whole property
and effects of the bank have not been equal to the stock
owned in the bank.   The loss or diminution of the capi-
tal stock must have happened several years before said tax
was assessed.   Generally, dividends were made semi-annu-
ally up to the expiration of the charter, and at the time of
said assessment the capital was invested mostly in money
loaned upon interest, and in other property that might
produce an income.   In 1843 the plaintiffs published no-
tice, as required by law, of their intention to close up
their business and divide the stock, and since the expira-
tion of their charter have been closing up the affairs of the
bank as fast as practicable; but there were debts due from

the bank, outstanding until after the month of April, 1845. The capital stock had not then been divided, and a small portion is yet undivided, and some debts still due from the plaintiffs. The said Wilson collected, by sale of property as aforesaid, the sum of one hundred seven dollars and thirty-seven cents. All of the inhabitants of Haverhill were assessed, together with said corporation as aforesaid, their proportion of said highway tax, and have paid their respective proportions in the usual way, under the direction of the several surveyors of said town. The bank has not been taxed for non-resident stock since the year 1845.

It was agreed that the question of what damages the bank should recover of the defendants, should be assigned and transferred to this court for determination.

*Quincy*, for the defendants.

It has been settled in this case that the property of the plaintiffs was liable to taxation; that the tax was in all respects legal, except that the warrant calling the meeting was posted a day too late. It is agreed by the case that all the other inhabitants of Haverhill paid their proportion of the tax for the year, and the only remaining question is, what is the measure of damages in this case? The defendants contend they should be merely nominal, because the plaintiffs, and those they represent, non-resident stockholders, had paid only their proportion of what they were liable to pay, and all the other tax payers in Haverhill had paid their tax. *Walker* v. *Cochran*, 8 N. H. 173; *Cavis* v. *Robertson*, 9 N. H. 524.

In one of these cases it is said there must be a lawful tax; and the plaintiffs contend that as the money here was not legally voted, the principle does not apply. In *Henry* v. *Sargent*, 13 N. H. 364, where there was no list, at the close of the opinion the court seem to intimate that the principle might apply where no tax could be assessed, on the ground that the party was liable to contribute his pro-

portion of the money to be raised, along with the others who paid without objection. If the plaintiffs can recover full damages, they escape contributing their proper proportion of the expense of the repairs of the highways for that year, which is not just; and if the vote was void, the selectmen might and would be bound to make repairs on the credit of the town ; in which case the plaintiffs would be held to pay the next year. The case finds no change of non-resident stockholders in the mean time. If the assessment was illegal and void, the tax need not be lost. It may be reässessed, as there may be a new grant, in which case the plaintiffs would have been liable for their just proportion. *Libby* v. *Burnham,* 15 Mass. 144.

*C. R. Morrison,* for the plaintiffs.

Officers *de facto* as well as officers *de jure,* when sued for the conversion of property sold under color of legal process, have been permitted to prove, in mitigation of damages, that the proceeds were applied to discharge a debt for which the plaintiff would be otherwise liable. *Blake* v. *Johnson,* 1 N. H. 91 ; *Perkins* v. *Thompson,* 2 N. H. 144 ; *Cavis* v. *Robertson,* 9 N. H. 544 ; *Prescott* v. *Wright,* 6 Mass. 20. In all such cases the money had been applied to a claim which had a legal existence at the time of the application, although the officer had been in some respects irregular. The claim, if not discharged by the payment, could be immediately enforced. Under those circumstances the rule prevents circuity of action, and injures no one. The owners had actually received the proceeds of the property instead of the property itself. 14 Pick. 361. But here the proceeds were applied to an illegal tax, and consequently there should be a full recovery. It is immaterial whether the illegality arises from a want of power in the town to vote the tax, or from a failure to exercise the power. Since the tax could not have been legally collected, the plaintiffs were in no way benefitted

by its discharge, and should not be obliged to allow anything for it. It cannot be pretended that the tax had any legal existence. It was a mere nullity. It cannot be regarded as the act of the town, because the town cannot act until the inhabitants have been properly warned. Hence the real ground of the defence is, that the town may vote a highway tax, although it is conceded that it did not vote the one for which the plaintiffs' goods were sold. There is no principle on which there can be a reduction of the damages. There are no data from which to determine the amount of the reduction, if a reduction were allowed. The decisions and practice of the courts are against the defendants. *Cavis* v. *Robertson*, 9 N. H. 544; *Drew* v. *Davis*, 10 Vt. 506; *Henry* v. *Chester*, 15 Vt. 460; *Whittlesey* v. *Clinton*, 14 Cow.; *Reynolds* v. *New-Salem*, 6 Met. 340; *Pickering* v. *Pickering*, 11 N. H. 141; *Brewster* v. *Hyde*, 7 N. H. 206; *Pike* v. *Hanson*, 9 N. H. 491; *Green* v. *Edson*, 2 N. H. 293; *Thurston* v. *Little*, 3 Mass. 429. The defendants admit that they are liable to at least nominal damages. They are thus liable only by reason of the illegality of the tax. For the same reason the plaintiffs have no remedy over upon the owners of the stock. They must, therefore, recover full damages, in order that the damages be commensurate with the injury. Rev. Stat., ch. 4, sec. 15.

GILCHRIST, C. J. It appears in this case that the warrant for calling the town-meeting at which the tax was voted, was not seasonably served or posted up, and that, therefore, the assessment was void, and the distress of the plaintiffs' goods unlawful. The only question now for consideration is, upon the amount of damages to which the plaintiffs are entitled for the unlawful seizure and sale of their property, and the conversion of the proceeds to the payment of the tax, and consequential expenses. And this question has become limited to the single inquiry,

whether the official and public character of the proceeding, and the use to which the proceeds of the sale were applied, afford any ground for mitigating the damages.

It may well be conceded, upon the authority of several cases, that where property is seized under color of legal process, by one actually exercising an office which entitles him to execute it, and the proceeds of the seizure are formally applied to reduce or extinguish a debt which the owner of the property is at all events bound to pay, such facts may be shown in mitigation of damages, although the officer, by irregularity in his acts, has forfeited the protection of the law. *Prescott* v. *Wright*, 7 Mass. 20; *Blake* v. *Johnson*, 1 N. H. 91; *Cavis* v. *Robertson*, 9 N. H. 524.

But it was said, in the last named of these cases, that the defendant must " show a tax legally granted;" and that seems to us to comprehend the sum of all that can be said upon the subject. If there were, in the present case, no legally existing tax, it matters not on what ground the tax is declared void. It may be one ground or another. It may be void because the warrant was not posted up at the proper time, or because it has been raised for an unconstitutional purpose. But it is enough that it is void. We cannot draw a line which shall include taxes that are void for one class of causes, and those that are void for another. The line would always be shifting with the circumstances of each case. It is, perhaps, of as much importance that taxes should be assessed in a legal manner as for legal objects, and as great mischiefs might possibly be shown to have resulted from deviations in the former as in the latter particular. However that may be, towns have no legal power to impose a tax upon their inhabitants, or others owning property liable to taxation by such towns, unless certain formalities be observed, designed to give sufficient notice to all entitled to participate in the act, to enable them to be present, and object, if they see cause. This is an indispensable preliminary; and it is

Grafton Bank *v.* Kimball.

nothing to the purpose that a notice but little less than the law requires, was given; for it is not in the power of this court to dispense with anything that the law requires, or in other words, to clothe the inhabitants of towns with other powers than those derived from the source from which we derive ours.

It has been urged in argument that the object for which the tax was assessed was one to which the plaintiffs were legally bound to contribute, and for which a reässessment might still compel them to contribute, and that thus the case fell within the reason of the rule allowing a limitation of damages. But such an extension of the principle would give it a vagueness totally subversive of its precision and of its force. It would admit inquiry as to what might and what might not be a legal object of taxation, and whether, if legal, the town might at another time deem the object a necessary and expedient one. It would admit inquiry as to the liability of the party to be taxed at all at a future time, and if taxable, whether to the same extent as before. In short, we should be required to form opinions not so often upon the validity of actual proceedings, as upon contingencies which must in their nature baffle the utmost diligence to settle.

We are of opinion that this is not a case within the principle which has been pointed out, admitting the restriction of damages; but that judgment should be rendered for the full value of the property sold, as shown by the sum for which it was sold.

*Judgment for the plaintiffs for* $107.37.